IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

LAJOYYA ASHLEY THOMAS                                              PETITIONER

V.                                      NO. 5:04cv00367 JWC

LARRY NORRIS, Director,                                            RESPONDENT
Arkansas Department of Correction

## MEMORANDUM OPINION AND ORDER

Lajoyya Ashley Thomas, formerly an Arkansas Department of Correction (ADC) inmate, brings this 28 U.S.C. § 2254 petition for writ of habeas corpus, along with a supporting brief (docket entries #1, #2).  Respondent concedes (docket entry #11) that Petitioner was in his custody at the time of filing[1] and has exhausted all nonfutile state remedies.  *See* 28 U.S.C. § 2254(a-c).  For the following reasons, the petition will be **dismissed** in its entirety.[2]

I.
Background

Following four bench trials in April 2000 in the Circuit Court of Pulaski County, Arkansas, Petitioner was convicted of six counts of second degree forgery, one count of first degree forgery, one count of fraudulent use of a credit card, and one count of financial identity fraud.  He was sentenced to concurrent terms of imprisonment, with the longest

---

[1]Although later released (docket entry #10), Petitioner was in ADC custody when he filed this petition, thus satisfying the jurisdictional custody requirement.  *See* 28 U.S.C. §§ 2241(c)(3), 2254(a); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (custody tested at time of filing petition); *Beets v. Iowa Dept. of Corrections Services*, 164 F.3d 1131, 1133 n.2 (8th Cir. 1999) (custody requirement met even though petitioner released during pendency of habeas petition).

[2]The parties have consented to final disposition of this matter by the United States Magistrate Judge (docket entry #14).

term being 300 months.  (R. 21-26, 38-40, 52-53, 69-73.)[3]  His cases were consolidated

for a direct appeal to the Arkansas Court of Appeals, which affirmed.  *Thomas v. State*, No.

CACR 00-1042, 2002 WL 54821 (Ark. Ct. App. Jan. 16, 2002) (Resp't Ex. 2)[4] (*Thomas I*).

Petitioner then filed in the state circuit court a timely petition for post-conviction relief

pursuant to Ark. R. Crim. P. 37.   The petition was denied, and Petitioner appealed.   The

Arkansas Supreme Court advised Petitioner that it was unable to reach the merits of

Petitioner's claims because he had failed to comply with the court's abstracting rules, giving

him an opportunity to file a substituted abstract.  *Thomas v. State*, No. CR 02-1347, 2003

WL 22311343 (Ark. Sup. Ct. Oct. 9, 2003) (Resp't Ex. 3)[5] (*Thomas II*).  When Petitioner

failed to comply within the prescribed time, the appeal was dismissed.  *Thomas v. State*,

No. CR 02-1347 (Ark. Sup. Ct. Feb. 5, 2004) (Resp't Ex. 3).

Petitioner now brings this federal habeas petition, advancing the following claims:

> 1.      In all of his cases except Case No. CR 99-3351, the evidence at trial was insufficient to support conviction;

> 2.      In Case No. CR 99-3351, his trial counsel was ineffective for failing to subject the prosecution's case to meaningful adversarial testing; and

> 3.      In the remaining cases, his counsel was ineffective for failing to raise sufficiency of the evidence at trial and on direct appeal.

---

[3]All record references are to the Pulaski County Circuit Court record of Petitioner's pretrial, trial and sentencing proceedings, submitted as Resp't Ex. 1 to docket entry #13.

[4]Also attached to docket entry #13, Resp't Ex. 2 consists of the appellate briefs and the Arkansas Court of Appeals' opinion.

[5]This exhibit, attached to docket entry #11, consists of the Arkansas Supreme Court docket sheet, the court's opinion directing Petitioner to submit a complying brief, and the subsequent mandate dismissing his appeal.

Respondent asserts that: (1) some of Petitioner's issues regarding sufficiency of the evidence are procedurally defaulted because he failed to properly raise them as points for reversal in his direct appeal; (2) the evidence supporting Petitioner's convictions was constitutionally sufficient; (3) all ineffective-assistance claims are procedurally defaulted because Petitioner failed to comply with the Arkansas Supreme Court's abstracting rules in his state post-conviction appeal; and (4) alternatively, all ineffective-assistance claims are without merit.  Although notified of his opportunity to reply to these arguments (docket entry #12), Petitioner has not done so and the time for replying as expired.

II.
Sufficiency of Evidence

Petitioner challenges the sufficiency of the evidence forming the basis for his convictions in three of his criminal cases: No. CR 99-2158, No. CR 99-2255, and No. CR 00-535.  Noting that the procedural default issues regarding these claims are "problematic," Respondent's argument instead focuses on the merits.  This Court will do the same.  *See Trussell v. Bowersox*, 447 F.3d 588, 590-91 (8th Cir.) *cert. denied*, 127 S. Ct. 583 (2006) (because procedural default does not constitute jurisdictional bar to federal habeas review, court may proceed to the merits in the interest of judicial economy); *Khaalid v. Bowersox*, 259 F.3d 975, 978 (8th Cir. 2001) (declining to address "the complexities of the procedural bar issue" where the claim is more easily resolved on the merits).

A.    Law.

The Due Process Clause of the Fourteenth Amendment guarantees that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the

existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). The evidence presented at a trial is constitutionally insufficient to convict only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. In making this determination, all of the trial evidence is to be viewed in the light most favorable to the state. *Id.* at 319. A reviewing court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and must defer to that resolution. *Id.* at 326. It is the responsibility of the trier of fact to reconcile conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* at 319. A federal habeas court is not permitted to conduct its own inquiry into witness credibility. *Wright v. West*, 505 U.S. 277, 296-97 (1992); *Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000) ("that is a task reserved to the jury").

The substantive elements of state crimes are defined by state law. *Jackson*, 443 U.S. at 324 n.16. Therefore, the Court will examine each of Petitioner's contested convictions in light of the applicable state statutory requirements and the principles enunciated in *Jackson.*

B.    No. CR 99-2158: Second Degree Forgery (Frederica Pharmacy and Marketplace Pharmacy).

Jennifer Armstrong testified that, sometime in February 1999, her purse was stolen from a closet in her office at Central Arkansas Radiation Therapy Institute. Her checkbook, driver's license, and social security card were among the items in her purse at the time it was taken, and she immediately reported the theft to her bank and to the police. She also

testified that, during this time, Petitioner was a member of the cleaning crew at her workplace and that he had access to the closet where she kept her purse.  (R. 99-104.)[6]

Walter Lyn Fruchey, a pharmacist at Frederica Pharmacy in Little Rock, testified that, on February 19, 1999, he filled a prescription written by Dr. Scott Dineheart for Jennifer Armstrong for Hydroquinone cream.  Mr. Fruchey identified Petitioner as the person who brought the prescription to the pharmacy to be filled and took it to the cash register to pay for it, testifying that he was dressed as a female.  The pharmacy received a check written on the account of Jennifer Armstrong for an amount sufficient to cover the cost of the prescription.  The check was returned from the bank as stolen.  (R. 119-29.)

Ray Turnage testified that he worked at Marketplace Pharmacy in Little Rock where, in February 1999, Petitioner brought in a prescription for Hydroquinone, requesting that it be filled, then returned the next day to pick up the medication.  The date of the prescription was February 18, 1999, and it was purportedly written by Dr. Dineheart for Jennifer Armstrong.  Mr. Turnage testified that Petitioner, dressed as a woman, gave him a check written in the name of Jennifer Armstrong.  (R. 129-37.)

Dr. Scott Dineheart, a dermatologist in Little Rock, testified that he did not have a patient by the name of Jennifer Armstrong and that he had never written a prescription for Ms. Armstrong for Hydroquinone.  He testified that the two prescriptions at issue were written on prescription pads from his office, but that he did not write them and that the handwriting and signatures on them were not his.  (R. 114-16.)

_____

[6]The trial court took judicial notice of this testimony from Ms. Armstrong, which was given in Case No. 99-3351 immediately prior to the bench trial in this case.  (R. 117-18.)  Petitioner is not challenging the sufficiency of the evidence in No. 99-3351, where he was convicted of passing a forged check on Ms. Armstrong's account to Neighborhood Wine and Spirits.

Ms. Armstrong testified that the checks to Frederica Pharmacy and Marketplace Pharmacy were among those she had reported stolen, that she did not write either of the checks, that she had never seen Dr. Dineheart, and that she had never received a prescription for Hydroquinone.  (R. 118-19.)

A financial crime detective with the Little Rock Police Department testified that she investigated the two checks at issue, determining that they were stolen from Ms. Armstrong's workplace and had been returned from the bank as forged.  After learning that Petitioner was a possible suspect, the detective prepared a photospread containing Petitioner's photo.  According to the detective, Mr. Fruchey positively identified Petitioner from the photospread as the person who presented the prescription to him at Frederica Pharmacy.  However, Mr. Turnage, the pharmacist at Marketplace Pharmacy, selected the photo of a person other than Petitioner as a "lookalike," but told police he was not sure. (R. 138-46.)

Based on this testimony, the trial court found Petitioner guilty of four counts of second degree forgery, two counts for the prescriptions and two counts for the checks.  (R. 149.)

In support of his claim that the evidence was insufficient to support the Frederica Pharmacy convictions, Petitioner points to certain weaknesses in the evidence: Ms. Armstrong admitted that she did not see Petitioner take her purse and that he was not the only person working on the cleaning crew at the time her purse was stolen; Mr. Fruchey admitted that he did not see Petitioner write, sign, possess or pass a check; the employee who received the check was not called as a witness; there were discrepancies between the

6

date on the check, Mr. Fruchey's testimony, and the bank imprint; and nothing confirms that the check written on Ms. Armstrong's account was used to pay for the prescription.

Under Arkansas law, a person forges a written instrument if, "with purpose to defraud, [he] makes, completes, alters, counterfeits, possesses, or utters any written instrument that purports to be or is calculated to become or to represent if completed the act of a person who did not authorize that act."  Ark. Code Ann. § 5-37-201(a) (2006).  A person commits second degree forgery if he "forges a written instrument that is .... [a] check ... or other written instrument that does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status."  *Id.* § 5-37-201(c)(1).

The Court has carefully reviewed the transcript of the relevant testimony.  As stated, in applying *Jackson*, this Court is required to view the trial evidence in the light most favorable to the state, resolve all conflicting inferences in the state's favor, and defer to the fact-finder's credibility determinations.  Doing so, the record shows that Ms. Armstrong's purse containing her checkbook was stolen, that Petitioner had access to the purse, that Petitioner took a prescription to Frederica Pharmacy to be filled, that the prescription falsely stated it was written by Dr. Dineheart for Ms. Armstrong, that the pharmacist filled the prescription and gave it to Petitioner, that Petitioner then took it to the cash register, that the pharmacy received a check on Ms. Armstrong's account for the amount of the prescription, and that Ms. Armstrong did not write the check.  Mr. Fruchey clearly and positively identified Petitioner, in a police photospread and in court, as the person who presented the prescription. (R. 121-22, 124-27, 141.) Petitioner's attorney cross-examined Ms. Armstrong, the pharmacist and the detective (R. 103-04, 124-29, 144-46), he presented Petitioner's testimony that he had never worked with Ms. Armstrong and did not

have any of her checks (R. 112), and he argued to the court that the state had failed to carry its burden of proof (R. 147-48).

The alternatives were thus fairly presented to and rejected by the trier of fact.  While there were inconsistencies in the evidence, it was the fact-finder's responsibility to decide which witnesses to believe, to reconcile discrepancies, and to draw reasonable inferences. Applying the *Jackson* principles, this Court is convinced that a rational trier of fact could have found, beyond a reasonable doubt, the essential elements of second degree forgery with regard to the prescription and check presented to Frederica Pharmacy.

As to the evidence supporting the Marketplace Pharmacy conviction, Petitioner's argument focuses solely on the identification given by Mr. Turnage.  Petitioner argues that his height and weight do not match the description given to police by Mr. Turnage, nor was Mr. Turnage able to identify Petitioner from the police photospread but instead picked another person.  Again, this is a matter of credibility for the trier of fact.  Although Mr. Turnage picked someone other than Petitioner from the photospread, he testified that he was unable to make a positive identification from the photos because the "hairstyles and characteristics" of the people in the photos looked different from the person he saw in the pharmacy.  Even when looking at the photospread in court, he was still unable to identify which of the photos was the person he waited on.  He said he could only make an identification "by looking at the person."   (R. 133-37.)  He identified Petitioner in court as the person who brought in the prescription and gave him a check, dressed as a woman and representing himself to be Jennifer Armstrong.  (R. 131, 134.)  Mr. Turnage saw the individual on two separate occasions: when he brought the prescription in and then the next day when he returned to pick up the medication.  He said he remembered Petitioner

because the prescription was an unusual one for a dark-skinned person,[7] and said he had "no doubt" that Petitioner was the right person.  (R. 132.)   Petitioner's counsel vigorously cross-examined Mr. Turnage and the police detective (R. 133-37, 144-46), and challenged the reliability of the identification in his arguments to the trial court (R. 148).

The alternatives were fully presented for consideration by the trier of fact, and this Court cannot reweigh the evidence.  Viewing the trial evidence in the light most favorable to the state, resolving all conflicting inferences in the state's favor, and deferring to the fact-finder's credibility determinations, this Court concludes that, under the *Jackson* analysis, a rational trier of fact could have found, beyond a reasonable doubt, that Petitioner was guilty of second degree forgery regarding the prescription and check presented to Marketplace Pharmacy.[8]

C.    No. CR 99-2555: Fraudulent Use of Credit Card (Patricia Craig).

John Maxheimer, a deliveryman for United Parcel Service, testified that he made several deliveries in February and March 1999 to a Patricia Craig at 100 Dennison Street in Little Rock.  Several of the shipments were from QVC and the Home Shopping Network,

---

[7]According to Dr. Dineheart's testimony, Hydroquinone cream is used for bleaching skin to make it a lighter color.  (R. 116.)

[8]The arguments by both parties here are based on whether the trial court's conviction on the Marketplace Pharmacy charge satisfies the *Jackson* standard for sufficiency of the evidence (docket entry #2, at 26-28, 30-32; #11, at 8-10).  In Petitioner's direct appeal, the Arkansas Court of Appeals analyzed the sufficiency issue by examining several factors to determine whether Mr. Turnage's identification was reliable.   *Thomas I, supra* at *2-*3.  Although not specifically challenged here, this appellate decision was not contrary to, or an unreasonable application of, the principles set forth in *Jackson* or the applicable United States Supreme Court cases regarding identifications, nor was the decision based on any unreasonable factual determinations.  *See* 28 U.S.C. § 2254(d); *Manson v. Brathwaite*, 432 U.S. 98, 114-15 (1977) (setting forth factors to be considered in determining the reliability of an identification).

and Mr. Maxheimer identified Petitioner as the person who received the shipments and signed for them as Patricia Craig.  (R. 149-59.)

Patricia Craig testified that she began having problems with her credit when she learned, in March 1999, that someone had applied for a Discover Card in her name.  She checked her credit report and discovered that credit accounts for the Home Shopping Network and QVC had been opened in her name and that approximately $2,800 worth of merchandise had been charged on the accounts.  Ms. Craig testified that she had never ordered any merchandise from either the Home Shopping Network or QVC and that she did not authorize the establishment of either account.  She also testified that she had never lived at 100 Dennison Street and that the signature appearing on the UPS delivery records was not hers.  She said she did not know Petitioner and never authorized him to use or sign her name.  (R. 160-77.)

A detective with the Little Rock Police Department testified that, after receiving a report from Ms. Craig, he contacted QVC and the Home Shopping Network and learned that merchandise had been shipped to 100 Dennison Street.   A phone number given was traced to Petitioner.  The UPS deliveryman identified Petitioner's photograph from a photospread as the person to whom the deliveries were made.  (R. 177-86.)

Based on this evidence, the trial court found Petitioner guilty of fraudulent use of a credit card.  (R. 190.)

Petitioner asserts that: there was no evidence to show that the items delivered to his residence by UPS were those ordered from the Home Shopping Network or QVC by use of a credit card belonging to Ms. Craig; there was no proof that Petitioner ever utilized any credit card account number belonging to Ms. Craig; and the only evidence that

Petitioner signed for the UPS delivery was the deliveryman's testimony that he "believed" Petitioner was the person who signed the receipt.

Under Arkansas law, a person commits the offense of fraudulent use of a credit card if, with purpose to defraud, he uses a credit card or credit card account number to obtain property with knowledge that the credit card or credit card account number is stolen, or where, for any other reason, his use of the credit card or account number is unauthorized. Ark. Code Ann. § 5-37-207(a).

Viewing the trial evidence in the light most favorable to the state, resolving all conflicting inferences in the state's favor, and deferring to the fact-finder's credibility determinations, the record shows that two credit accounts were opened in Ms. Craig's name, that merchandise was charged to the accounts and delivered to an address not belonging to Ms. Craig, that Petitioner signed for the merchandise at that address using Ms. Craig's name, and that Ms. Craig did not authorize creation of the accounts, use of the accounts to purchase merchandise, or acceptance of the deliveries. Petitioner's counsel cross-examined the witnesses (R. 156-59, 175-77, 182-86), and argued the evidentiary weaknesses to the court (R. 189-90). The trier of fact was entitled to consider all the evidence, both circumstantial and direct, and it was reasonable for the court to infer from the evidence presented that Petitioner fraudulently created and utilized the credit accounts. *See Sera v. Norris*, 400 F.3d 538, 544 (8th Cir. 2005) (circumstantial evidence is sufficient to support a conviction).

The evidence was sufficient, under *Jackson*, for a rational trier of fact to find Petitioner guilty of fraudulent use of a credit card account as to this charge.

11

D.      No. CR 00-535: Financial Identity Fraud and First Degree Forgery (Denecia Alexander).

Jason Sykes, a loss prevention officer at a J.C. Penney store in Little Rock, testified that on December 1, 1999, he received a call from an employee at another store describing two persons who had apparently passed two forged checks at that store. The employee told him "they might be men dressed up as females." Soon after, Mr. Sykes and others in the loss prevention department began to watch Petitioner, who met the employee's description, over the store's closed security system. They observed Petitioner writing a check for a purchase in the cosmetics department. The officers called the sales clerk and told her to stall while they contacted the bank to determine whether the check was fraudulent. During this time, Petitioner left the store, and the loss prevention officers apprehended him in the parking lot. (R. 192-203.)

The check that Petitioner wrote at J.C. Penney was in the name of Denecia Alexander. The sales clerk testified that, as identification, Petitioner presented a driver's license with information coinciding with the check. (R. 204-07.) Ms. Alexander testified that she did not write any checks at J.C. Penney's cosmetics department on December 1, 1999. She testified that the check was written on an account she shared with her mother, but that the signature on the check was not hers. She explained that Petitioner must have obtained the checks by placing a check-printing order with the bank of a series of checks that were numbered higher than the checks she and her mother had been using. She testified that she did not know Petitioner and did not authorize him to order the checks. (R. 208-16,)

12

According to the testimony, the driver's license presented as identification bore Ms. Alexander's name and social security number, but Petitioner's photo.   Ms. Alexander testified that the signature on the driver's license was not hers and that she did not create the license or authorize it to be created.  (R. 210, 216-17, 222-23.)  Petitioner admitted to police and in court that he had "fake" identification in Ms. Alexander's name, but said he did not create the driver's license himself and "it was just issued to [him]."  (R. 230, 232-33, 258 [St. Ex. 10].)

Petitioner's only argument here is that the evidence was insufficient to convict him of first degree forgery regarding the driver's license because the language of the applicable statute, Ark. Code Ann. § 5-37-201(b), requires forgery of a financial document or other instrument that can be exchanged for something of value.[9]

It is not this Court's role to interpret a state's criminal statutes or decide questions of state law.  A federal habeas court is limited to deciding issues of federal constitutional or statutory law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see Ford v. Norris*, 364 F.3d 916, 919 (8th Cir. 2004) ("As the supreme judicial authority of the state, [the Arkansas Supreme Court] decides what state law is, an issue which cannot itself be reviewed in a federal habeas proceeding.").  Neither party has identified any Arkansas cases deciding whether a driver's license is the type of instrument contemplated by § 5-37-201(b).

Furthermore, nothing suggests that the Arkansas courts would construe the statutory language as narrowly as Petitioner urges.  The state courts strictly construe criminal statutes and resolve any doubts in favor of the defendant.  *Jester v. State*, 367

---

[9]He does not challenge the convictions for second degree forgery (the check) or financial identity fraud (*see* docket entry #2, 34-38).

  
Ark. 249, 2006 WL 2699760, *4 (Ark. 2006).  However, the courts also adhere to the basic

rule of statutory construction, which is to give effect to the intent of the legislature. *Id.*  The

first rule of statutory construction is to construe the statute just as it reads, giving the words

their ordinary and usually accepted meaning in common language. *Id.*

> Section 5-37-201(b) provides:
>
> (b) A person commits forgery in the first degree if he or she forges a written instrument that is:
>
> (1) Money, a security, a postage or revenue stamp, or other instrument issued by a government; or
>
> (2) A stock, bond, or similar instrument representing an interest in property or a claim against a corporation or its property.

A "written instrument" is defined as "any paper, document, or other material containing

written or printed matter or its equivalent," including "money, token, stamp, seal, badge,

trademark, retail sales receipt, universal product code label or other evidence or symbol

of value, right, privilege, or identification that is capable of being used to the advantage or

disadvantage of any person." *Id.* § 5-37-101(9).

The ordinary meaning of the words "other instrument issued by a government" and

"written instrument," as used in § 5-37-201(b) and broadly defined in § 5-37-101(9), is

general enough to encompass a driver's license containing Petitioner's photograph, but

using Ms. Alexander's name and social security number.

Petitioner argues that a driver's license more closely fits the type of written

instrument described for second degree forgery in § 5-37-201(c), *i.e.*, a "written instrument

officially issued or created by a public office, public servant, or government agent."

However, the Arkansas Supreme Court has repeatedly held that, when two punishment

14

statutes exist, a defendant can constitutionally be charged and convicted under the more stringent provision. *Jester*, *supra* at *4-*5. Therefore, the trial court was not prevented from convicting Petitioner of the more serious offense of first degree forgery, even though the charged conduct could also constitute the offense of second degree forgery. *Id.*

Under these circumstances, the evidence presented at Petitioner's trial on the charge regarding the driver's license was sufficient for a rational trier of fact to find, beyond a reasonable doubt, that he committed first degree forgery.

E.    <u>Summary</u>.

All of Petitioner's claims regarding sufficiency of the evidence, as raised in Ground 1, are without merit and must be dismissed.

III.
<u>Ineffective Assistance of Counsel</u>

Respondent contends that federal review of Petitioner's ineffective-assistance claims is barred because Petitioner failed to first properly present them to the state's highest court in an appeal of his Rule 37 post-conviction denial, resulting in a procedural default.

A.    <u>Procedural Default</u>.

Before seeking federal habeas review, a state prisoner must first fairly present the substance of each claim to each appropriate state court, thereby alerting those courts to the federal nature of his claims and giving them an opportunity to pass upon and correct any constitutional errors made there. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *see* 28 U.S.C. § 2254(b) & (c) (requiring federal habeas petitioner to pursue all remedies available in the state courts). "Out of respect for the finality of state-court judgments," federal

habeas courts, as a general rule, are closed to claims that state courts consider defaulted due to the prisoner's failure to comply with adequate and independent state procedural rules for presenting claims.  *House v. Bell*, 126 S. Ct. 2064, 2068 (2006); *Coleman v. Thompson*, 501 U.S. 722, 729-30, 750 (1991).  Where a state procedural default has occurred, federal habeas review is permitted only if the petitioner can demonstrate (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the defaulted claim will result in a fundamental miscarriage of justice, that is, that a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent of the underlying offense.  *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Here, the Arkansas Supreme Court was unable to review Petitioner's claims in his post-conviction appeal due to an abstracting deficiency.  Failure to properly appeal the denial of a post-conviction petition to the highest state court constitutes a procedural default.  *Osborne v. Purkett*, 411 F.3d 911, 919 (8th Cir. 2005), *cert. denied*, 547 U.S. 1022 (2006). The Arkansas appellate courts' abstracting rules are firmly established and regularly followed procedural rules, with which all appellants are required to comply.  *Clay v. Norris*, 485 F.3d 1037, 1040-41 (8th Cir. 2007).  When an Arkansas state-court appeal is dismissed for non-compliance with the abstracting requirements after a state prisoner has been given an opportunity to cure any deficiencies, an adequate and independent state ground bars federal habeas review of the defaulted claims.  *Id.*

Petitioner's ineffective-assistance claims, therefore, are procedurally defaulted and he is required to meet the cause-prejudice requirement or to fit within the "fundamental miscarriage of justice" or "actual innocence" exception to the requirement.

16

Petitioner makes no attempt to fit within the demanding actual-innocence exception, which will permit federal habeas review only in the "extraordinary" case. *See Schlup v. Delo*, 513 U.S. 298, 324-31 (1995) (exception requires habeas petitioner to support his allegations of constitutional error with new reliable evidence not presented at trial, and to show, in light of the new evidence, "that it is more likely than not that 'no reasonable juror' would have convicted him"). Moreover, the narrow exception does not appear applicable, as Petitioner makes no assertion of innocence and presents no evidence to that effect, much less anything new and reliable. *Id.* at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."); *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir.) (exception requires petitioner "to present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted"), *cert. denied*, 127 S. Ct. 590 (2006); *Osborne*, 411 F.3d at 920 (evidence not "new" if existed at time of trial and could have been discovered earlier if petitioner or counsel had diligently pursued it).

Consequently, to obtain habeas review of his defaulted claims, Petitioner must show both cause and prejudice. Cause requires a showing of some impediment, external to the petitioner's defense and not fairly attributable to him, preventing him from constructing or raising his claims in state court or complying with the state's procedural rules. *Coleman*, 501 U.S. at 753. Pro se status and unfamiliarity with legal arguments and procedural matters are not sufficiently external to constitute cause excusing a procedural default. *Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir. 1988). To demonstrate prejudice, a petitioner must show, "not merely that the errors at his trial created a *possibility* of

prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see Carroll v. Schriro*, 243 F.3d 1097, 1102 (8th Cir. 2001).

As cause for failing to perfect his post-conviction appeal, Petitioner says he was unable to prepare an abstract because his requests for a trial transcript had been denied and he had no financial means to obtain one.  A close review of the record demonstrates that Petitioner's default in this regard was due to his own inaction, rather than an external impediment.  By order dated October 10, 2001, the Arkansas Court of Appeals denied, in Petitioner's direct appeal proceedings, his pro se request for a trial transcript.  (*See* Resp't Ex. 2.)  However, the default of his ineffective-assistance claims occurred two years later, during the appeal of the denial of his Rule 37 post-conviction petition.  In that appeal, the Arkansas Supreme Court issued an order, dated October 9, 2003, stating that it was unable to review Petitioner's claims that his trial counsel was ineffective because Petitioner had failed to abstract the trial proceedings.  The order further notified Petitioner that he had fifteen days to submit a compliant abstract and advised him that, if he failed to comply, the lower court judgment could be summarily affirmed. *Thomas II*, *supra* at *1.  The supreme court docket (Resp't Ex. 3) reflects no action in the case until *ninety-nine days later*, on January 16, 2004, when the state filed a motion to dismiss the appeal based on Petitioner's non-compliance.  Petitioner did not respond to the motion.  On February 5, 2004, which was *119 days* after Petitioner was informed of his opportunity to comply, the appeal was dismissed.   During the 119-day period, the supreme court docket shows no filing whatsoever by Petitioner, much less a request for a trial transcript or any allegation of the

18

inability to file a compliant abstract due to lack of a transcript.  Under these circumstances, this Court finds that Petitioner's procedural default was attributable to his own inaction.

Furthermore, aside from the cause issue, Petitioner has failed to show that he was prejudiced by counsel's asserted errors, as his ineffective-assistance claims are without merit for the reasons that follow.

B.    Merits.

A habeas petitioner claiming ineffective assistance of his state-court counsel must show (1) that counsel's representation "fell below an objective standard of reasonableness" and (2) that counsel's deficient performance prejudiced the defendant.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  The defendant is prejudiced by the inferior performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice without resolving the performance element, that course should be followed.  *Id.* at 697.

Petitioner's first ineffectiveness claim concerns his second degree forgery conviction in No. CR 99-3351.  In that case, Douglas McDowell, the owner of Neighborhood Wine and Spirits in North Little Rock, testified that on February 27, 1999, he accepted a check from Petitioner, who was dressed as a woman, at the drive-in window of the store.  The check was written on the account of Jennifer Armstrong and, following a practice he applied to all new customers, Mr. McDowell obtained a thumbprint on the check and called the bank to verify funds in the account.  The bank responded that the check had been reported stolen, and the state crime lab later confirmed that the thumbprint obtained by Mr. McDowell matched Petitioner.  (R. 89-98, 105-09.)  Ms. Armstrong confirmed that the

19

check was one that she had reported missing, and she testified that she did not write the check to Neighborhood Wine and Spirits and did not authorize Petitioner to do so.  (R. 100-01, 103.)

Petitioner alleges that his trial counsel was ineffective for failing to subject the prosecution's case to meaningful adversarial testing because counsel did not challenge the admission of the state crime lab report and fingerprint analysis.  He says the fingerprint on the check was smudged and that he had advised counsel that the fingerprint was not his. He says the fingerprint analyst was not present to authenticate the report, and he faults counsel for failing to cross-examine the police officer who testified about the report, failing to obtain another expert analysis, and failing to contest Mr. McDowell's in-court identification of him.

The trial transcript shows that counsel cross-examined the store owner regarding his ability to positively identify Petitioner, the method of collecting fingerprints on checks, the store's practice, and his lack of expertise in the area.  (R. 96-98.)  Counsel also called Petitioner to testify, eliciting testimony from Petitioner that he did not pass the check, did not know how his fingerprint could have gotten on the check, and was not even sure that the fingerprint was his.  Petitioner pointed out that it was just a "partial fingerprint."  (R. 111-12.)  The judge was able to examine the fingerprint on the check for himself, as well as the state crime lab's fingerprint analysis report, and assign them the weight he deemed warranted.  (R. 244-47.)  Apart from the fingerprint evidence, Mr. McDowell positively identified Petitioner in court as the person who drove up to the window of his store, gave him the check at issue, and placed his thumbprint on the front of the check at Mr. McDowell's direction.  (R. 91-93, 96-98.)  Under these circumstances, Petitioner has failed

20

to demonstrate a reasonable probability that, but for counsel's alleged omissions, the outcome of his trial would have been different, as required by *Strickland.*

Respondent correctly asserts that counsel's actions are subject to *Strickland*'s requirement that a showing of actual prejudice be made, rather than applying the presumed-prejudice standard of *United States v. Cronic*, 466 U.S. 648 (1984), as urged by Petitioner.  *See id.* at 659 (prejudice need not be proven when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing").  The *Cronic* standard applies only if counsel's failure to test the prosecution's case is "complete," which was not the situation here.  *See Lamar v. Graves*, 326 F.3d 983, 985 (8th Cir. 2003).

Petitioner's remaining ineffectiveness claims are that counsel was ineffective in Case Nos. 99-2158, 99-2555 and 00-535 for failing to challenge the sufficiency of the evidence at his trials and in his direct appeal.  As explained earlier, the evidence was constitutionally sufficient to support the contested convictions in each of these cases. Therefore, counsel was not deficient in failing to pursue the issue, nor is there a reasonable probability that, if counsel had challenged the evidence, the outcome of his trials would have been different.  *See Thai v. Mapes*, 412 F.3d 970, 979 (8th Cir. 2005) (counsel not ineffective for failing to make meritless argument).

C.   Summary.

Petitioner's ineffective-assistance claims, as raised in Grounds 2 and 3, are procedurally barred due to his failure to demonstrate cause, prejudice or actual innocence, and, alternatively, the claims fail on the merits.

IV.

Conclusion

For the foregoing reasons, this 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry #1) is **dismissed** in its entirety with prejudice.

IT IS SO ORDERED this 15th day of August, 2007.


_____
UNITED STATES MAGISTRATE JUDGE